IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JESUS GONZALES,<br><br>        Plaintiff,<br>vs.<br><br>SANDOVAL COUNTY,<br><br>        Defendant. | No. CIV 97-0099 PJK/WWD |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant's Motion for Judgment as a Matter of Law filed February 6, 1998 (doc. 68), Plaintiff's Motion for Award of Back Pay filed February 25, 1998 (doc. 71), Defendant's Motion to Reduce Jury Verdict filed February 11, 1998 (doc. 70), and Plaintiff's request for reinstatement, the issue having been raised in the complaint and the pretrial order, see doc. 1 at 3; doc. 41 at 2.

The court, having reserved decision on Defendant's motions for judgment as a matter of law made at the close of Plaintiff's case and at the close of the evidence, finds that those motions should be denied. The court also finds that Plaintiff's motion for an award of back pay with prejudgment interest should be granted. The court further finds that Defendant's motion to reduce the size of the

jury verdict should be granted, albeit on slightly different grounds. The jury's verdict of $50,000 in compensatory damages should be reduced to judgment; however, the $450,000 in front pay was purely advisory, and the court declines to award front pay as not justified by the evidence.  Plaintiff's request for reinstatement should be denied.

## Background

Plaintiff has a history of chronic fatigue syndrome and Epstein-Barr virus. In his complaint, Plaintiff alleged he was terminated from his position as a deputy in the Sandoval County Sheriff's Department in violation of the Americans with Disabilities Act (ADA).  See 42 U.S.C. §§ 12101-12130.  The case was submitted to the jury on two theories:  (1) Defendant discriminated against Plaintiff and terminated him because of his disability, and (2) Defendant discriminated against him by making a prohibited inquiry about his disability and terminating him because of his response.   On special interrogatories, the jury found intentional discrimination by Defendant based on Plaintiff's disability and on post-employment prohibited inquiries in violation of the ADA.  See 42 U.S.C. § 12112(a), (d)(4)(A); Special Verdict Form filed January 29, 1998 (doc. 67). The jury awarded $450,000 in front pay and $50,000 in compensatory damages. Id.

Discussion

A. Judgment as a Matter of Law

At the close of Plaintiff's case and at the close of the evidence, the court took Defendant's motions for judgment as a matter of law under advisement and submitted the case to the jury, subject to the court's later consideration of the legal questions raised by the motion. See Fed. R. Civ. P. 50(b). The court may grant judgment as a matter of law on a claim if (1) there was no legally sufficient evidentiary basis for a reasonable jury to find for the nonmovant on an issue, and (2) the claim cannot be maintained under the controlling law without a favorable finding on that issue. See id. 50(a)(1). Thus, the motion should be granted only if the evidence conclusively favors the movant such that reasonable jurors could not differ as to the inferences that may be drawn. See Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996). In applying this standard, the court views the evidence and draws all reasonable inferences therefrom most favorably to the nonmoving party. See id.

First, Defendant argues that insufficient evidence supported Plaintiff's claim that he was terminated due to his disability. Defendant is not entitled to relief on this basis because, as discussed below, there was sufficient evidence to support the jury verdict on the prohibited inquiry claim, which supports all damages that shall ultimately be awarded.

Second, Defendant argues that there was insufficient evidence that Plaintiff

was "a qualified individual with a disability," 42 U.S.C. § 12112(a), because Plaintiff was not "disabled" within the meaning of the ADA, 42 U.S.C. § 12102(2). Plaintiff, however, need not establish disability to state a claim for a prohibited inquiry under the ADA. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1229 (10th Cir. 1997).

Third, Defendant argues that its disability-related inquiry was permissible under the exception for inquiries that are "job[ ]related and consistent with business necessity." See 42 U.S.C. § 12112(d)(4)(A). According to Defendant's argument, a New Mexico statute making good health a requirement for certification as a police officer brings its inquiry within the exception as a matter of law.[1] Whether an inquiry is job related and consistent with business necessity, however, is a fact-intensive inquiry. See 29 C.F.R. Pt. 1630, App. § 1630.2(n) (1997); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995). Thus, although the existence of the New Mexico statute does support Defendant's contention that any inquiry was excepted, it does not make it so as a matter of law, as if all other facts and circumstances were irrelevant.

To the contrary, the extent to which the statute supports Defendant's

---

[1] The statute provides that for a police officer to be certified, he or she must be "free of any physical condition that might adversely affect [his or her] performance as a police officer or prohibit [him or her] from successfully completing a prescribed basic law enforcement training required by the Law Enforcement Training Act." N.M. Stat. Ann. § 29-7-6(A)(5) (Michie 1997).

contention is limited by the Supremacy Clause and the ADA itself.  Although an officer must be physically fit to be certified under the New Mexico statute, state law can only require fitness to the extent permissible under the ADA--the level of fitness necessary to perform the essential functions of the relevant position, with or without reasonable accommodations.  See U.S. Const. art. VI, cl. 2; 42 U.S.C. § 12111(8).  Consequently, the state statute only supports a defense of job relatedness and business necessity for an inquiry that is necessary to ascertain this level of fitness, or whether any shortcoming can be reasonably accommodated.  See E.E.O.C. Technical Assistance Manual to 29 C.F.R. § 1630.14(c) (interpreting exception to allow inquiries "[w]hen an employee is having difficulty performing his or her job effectively").  Thus, whether the inquiry was excepted cannot be controlled exclusively by the state statute, but depends upon the nature of the inquiry and the facts supporting any doubt that the employee can, or will continue to be able to, effectively perform the essential functions of his or her position.

  Defendant also argues that the evidence compels a finding that the inquiry in this case was job related and consistent with business necessity.  The evidence on this point, however, was sufficiently controverted.  In Plaintiff's favor, he worked forty hours per week plus overtime, never took sick leave, and never asked for any accommodations.  During his medical exam to enter service, his physician noted no evidence of impairment, and later cleared Plaintiff to attend

the police academy. Moreover, Defendant stipulated that Plaintiff was able to perform the essential functions of his position. A reasonable jury could have found, viewing this evidence in the light most favorable to Plaintiff, that any post-employment disability-related inquiry was unnecessary because Plaintiff was having no difficulty effectively performing the essential functions of his position.

Fourth, Defendant argues that Plaintiff failed to prove that its legitimate nondiscriminatory reasons for Plaintiff's termination were pretextual. To prove general discrimination under the ADA, a plaintiff must prove that intentional discrimination was a motivating factor in the adverse employment action. When an employer offers legitimate, nondiscriminatory reasons for the adverse employment action, a plaintiff may still prevail by demonstrating those reasons are pretextual. This may be accomplished by showing that it is more likely that a discriminatory reason motivated the employer or that the employer's proffered reasons are unworthy of belief. See Bolton v. Scrivner, Inc., 36 F.3d 939, 944 (10th Cir. 1994) (discussing ADEA), cert. denied, 513 U.S. 1152 (1995). The discrimination must be linked in this way to the adverse employment action. See Berry v. Stevinson Chevrolet, 74 F.3d 980, 985 (10th Cir. 1996).

The ADA provision on prohibited inquiries, however, stands alone so that a prohibited inquiry in and of itself may be a violation. See 42 U.S.C. § 12112(d)(4)(A); 42 U.S.C. § 12117(a) (making Title VII remedies available for violation of "any provision" of the ADA); 29 C.F.R. § 1630.13; 29 C.F.R. Pt.

1630, App. § 1630.13; Roe, 124 F.3d at 1229; Doe v. Kohn Nast & Graf, 866 F. Supp. 190, 197 (E.D. Pa. 1994). Consequently, a prohibited inquiry claim, unlike a general discrimination claim, does not necessarily implicate the analysis discussed above of legitimate nondiscriminatory reasons and the possibility that they are pretextual.

Defendant's argument on the prohibited inquiry claim, however, is essentially one of causation. See Defendant's Memorandum in Support of Judgment as a Matter of Law filed February 6, 1998 at 13-14 (doc. 69). Plaintiff's theory of liability for damages flowing from his termination was that Defendant discriminated against him by making a prohibited inquiry and then terminated him because of his response. In opposition to this theory, Defendant contends that reasons other than the response caused the termination. Id. Thus, the issue becomes whether sufficient evidence supports Plaintiff's theory that the prohibited inquiry, and the reasonably foreseeable response, resulted in his termination.[2]

Defendant proffered as reasons for the termination Plaintiff's untruthfulness, insubordination, and poor work performance. Defendant argues

---

[2] Plaintiff requested instructions consistent with his theory which were given without objection. In viewing the evidence in the light most favorable to the Plaintiff, it is apparent that the jury determined that he was terminated based on his response, and then awarded damages. I have no occasion to address the question of what damages are available in a case where the prohibited inquiry is not followed by an adverse employment action.

that Plaintiff's only evidence that those reasons were pretextual was the temporal proximity between the disability-related inquiry and accompanying response and his termination.  There was, however, testimony from more than one witness that Plaintiff was truthful and not insubordinate, and testimony and documentary evidence that his work performance was good.  This evidence points out the inconsistencies and contradictions in Defendant's proffered reasons.  See Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997).  Temporal proximity did not stand alone; and the jury was not required to accept Defendant's stated reasons for the employment action.  The evidence, when viewed in the light most favorable to the Plaintiff, suggested that the prohibited inquiry, itself a form of discrimination under the ADA, see 42 U.S.C. § 12112(d)(1) (referencing § 12112(a)), resulted in an involuntary disclosure that was responsible for the termination.

Lastly, Defendant cites Roe for the proposition that only injunctive relief is available for prohibited inquiry claims.  Roe does not support Defendant's contention because it involved a claim by a present employee to enjoin future inquiries.  See Roe, 124 F.3d at 1229 n.5.  The issue of whether damages flowing from termination are available for a prohibited inquiry claim was not presented. See id.  Thus, judgment as a matter of law shall be denied.

### B.  Back Pay

Plaintiff seeks an award of back pay with pre-judgment interest.  Back pay

is an authorized form of damages under the ADA. See 42 U.S.C. §§ 2000e-5(g), 12117(a); Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975). The decision to award back pay lies in the court's equitable discretion. See E.E.O.C. v. General Lines, Inc., 865 F.2d 1555, 1558 (10th Cir. 1989).

After being terminated by Sandoval County on October 17, 1995, four to five weeks passed before Plaintiff obtained employment. When Plaintiff was terminated, he was earning approximately $2,000 per month in wages and the value of compensatory time. In accordance with the applicable law and the evidence adduced at trial, the court shall award Plaintiff back pay in the amount of $2,000.

The court may also, in its discretion, award pre-judgment interest on Plaintiff's back pay award. See Daniel v. Loveridge, 32 F.3d 1472, 1478 (10th Cir. 1994). Such an award may in appropriate cases further the remedial purpose of the ADA to make plaintiffs whole. See id. The date one month from Plaintiff's termination was November 17, 1995. Because the federal statute on interest addresses post-judgment interest and is silent as to pre-judgment interest, setting the rate for pre-judgment interest is in the discretion of the district court. See 28 U.S.C. § 1961; Smith v. American Int'l Life Assurance Co., 50 F.3d 956, 958 (11th Cir. 1995). Plaintiff seeks interest at the rate of 5.45%, and Defendant does not dispute this rate. The court therefore shall award Plaintiff pre-judgment interest on the $2,000 back pay award accruing beginning November 17, 1995

until entry of judgment at the rate of 5.45%.

## C.  Reinstatement

Plaintiff requested reinstatement in his complaint and the pretrial order, and requested discussion of the procedural issues raised by the request in a letter to the court dated January 14, 1998 (lodged in correspondence section of court file).  Since the verdict, this issue has not been addressed further.  Ordering reinstatement lies within the court's wide equitable discretion.  See Sears v. Atchison, Topeka & Santa Fe Ry. Co., 645 F.2d 1365, 1378 (10th Cir. 1981), cert. denied, 456 U.S. 964 (1982); General Lines, 865 F.2d at 1560-61.  The court has discretion to deny reinstatement where a warm working relationship would not ensue.  See General Lines, 865 F.2d at 1564; Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir. 1980).  Reinstatement also may be inappropriate where the plaintiff has found other work.  See Roush v. KFC Nat'l Mgmt. Co., 10 F.3d 392, 398 (6th Cir. 1993), cert. denied, 513 U.S. 808 (1994).

After hearing the testimony and witnessing the demeanor of the Plaintiff and the superior officers at the Sheriff's Department, the court finds that reinstatement would be inappropriate because of hostility between the parties that would preclude a productive working relationship given the nature of the work, and because Plaintiff has found other work.  Reinstatement would serve neither Plaintiff nor Defendant well.  Consequently, the court shall deny reinstatement.

See Hecht Co. v. Bowles, 321 U.S. 321, 329-30 (1944) (noting the important role of practicality in each particular case in molding equitable decrees).

### D.  Front Pay

Defendant's motion for reduction of the jury award of front pay is based on the damage cap on compensatory damages.  See 42 U.S.C. § 1981a(b)(3). Defendant contends that the $450,000 front pay award is subject to the $50,000 statutory cap for employers with between 14 and 101 employees.  See 42 U.S.C. § 1981a(b)(3)(a).  Plaintiff responds that this cap is inapplicable to awards of front pay because front pay is not a form of compensatory damages, but rather a form of relief under 42 U.S.C. § 2000e-5(g), and awards under § 2000e-5(g) are not subject to the damage cap.  See 42 U.S.C. § 1981a(b)(2).  In his response, Plaintiff cites cases that support his argument only because they hold that front pay is an equitable remedy to be awarded by the court.  Defendant argues persuasively in reply that if front pay is equitable, the court should make the determination of front pay.

On March 5, 1998, Plaintiff served on Defendant "Plaintiff's Motion to Strike Defendant's Reply Brief or In the Alternative for Leave to File a Surreply" and thereafter submitted an unopposed  proposed order denying the motion to strike but granting leave to file a surreply (both lodged in correspondence section of court file).  The court is in agreement that the motion to strike is not well

taken and declines to grant leave to file a surreply. The court understands the Plaintiff's position as set out in the motion, but cannot agree with it as will be apparent from the following discussion.

In this circuit, prior to the Civil Rights Act of 1991, front pay awards under Title VII, and statutes with remedies based on Title VII, were held to be in the equitable discretion of the court. See Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1426-27 (10th Cir. 1991) (involving age discrimination claims). The Tenth Circuit has not yet addressed whether this view survives the Civil Rights Act of 1991, and the circuits that have addressed the issue are split. See e.g., Williams v. Pharmacia, Inc., 1998 WL 81258, at *7-8 (7th Cir. Feb. 26, 1998); Hudson v. Reno, 130 F.3d 1193, 1201-03 (6th Cir. 1997); Lussier v. Runyon, 50 F.3d 1103, 1107-08 (1st Cir.), cert. denied, 116 S. Ct. 69 (1995); Hadley v. Vam PTS, 44 F.3d 372, 376 (5th Cir. 1995); see also McCue v. Kansas Dep't of Human Resources, 948 F. Supp. 965, 967-68 (D. Kan. 1996) (submitting front pay to jury where reinstatement not requested); Davoll v. Webb, 968 F. Supp. 549, 552-53 (D. Colo. 1997) (involving compensatory damages decided by jury, and back and front pay decided by court). In this case, both parties requested the jury be instructed regarding front pay, and the court complied in an abundance of caution in the event the Tenth Circuit were to determine that front pay should be submitted to the jury. That this issue was in flux was no doubt apparent to the parties; both parties requested a pattern instruction on future damages cautioning

that "it is not clear at this time that this is a jury issue." 3 Devitt et. al, <u>Federal Jury Practice and Instructions</u> § 104A.11 at 212-13 (Supp. 1997). Absent contrary and yet-to-emerge Tenth Circuit authority, the court remains convinced such awards are in the court's equitable discretion. Thus, the jury verdict on front pay was purely advisory and the court should decide the front pay award. <u>See</u> <u>Denison</u>, 941 F.2d at 1426-27.

The purpose of equitable remedies under Title VII, and statutes with remedies based on Title VII, is to make a plaintiff whole. <u>See</u> <u>Sandlin v. Corporate Interiors Inc.</u>, 972 F.2d 1212, 1215 (10th Cir. 1992). To do so is to put the plaintiff, as nearly as possible, into the position in which he or she would have been absent the discriminatory conduct. <u>See id.</u> Front pay is intended to compensate victims of discrimination following judgment for any continuing effects of discrimination, until the victim can be made whole. <u>See</u> <u>Pitre v. Western Elec. Co.</u>, 843 F.2d 1262, 1278 (10th Cir. 1988).

An award of front pay in this case is not justified by the evidence presented, and the court cannot accept the jury's advice of $450,000, an amount that can only be the result of speculation and conjecture. First, the evidence does not support a conclusion that Plaintiff will not be "whole" after judgment--that Plaintiff's economic situation will be worse than it would have been absent the discrimination. Second, on matters of present or deferred compensation Plaintiff did not present the testimony of an economist or any other witness knowledgeable

about these matters.  What little evidence was presented indicates that Plaintiff presently earns $14 per hour, $4.04 more than the $9.96 he last earned at Sandoval County.  See Tr. 152-54.  The court finds Plaintiff will suffer no continuing effects of discrimination after judgment, and therefore shall grant the motion to reduce the jury verdict on front pay to zero.

After addressing numerous issues relating to remedies in this case, the court notes that the court leaves intact the jury award of $50,000 in compensatory damages, and shall award, in addition, $2,000 in back pay with prejudgment interest.  The court finds that these will advance the congressional purposes of the remedies borrowed by the ADA from Title VII.  They will deter future unlawful employment actions by Defendant, promote equal employment opportunity, and compensate Plaintiff for his injuries.  See Albemarle Paper, 422 U.S. at 421; Fitzgerald, 624 F.2d at 956-57.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendant's Motions for Judgment as a Matter of Law made during trial and taken under advisement are DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Judgment as a Matter of Law filed February 6, 1998 (doc. 68), is DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Award of Back Pay with pre-judgment interest filed February 25,

1998 (doc. 71), is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Reduce Jury Verdict filed February 11, 1998 (doc. 70), is GRANTED on different grounds.

IT IS FURTHER, ORDERED, ADJUDGED AND DECREED THAT Plaintiff's request for reinstatement is DENIED.

Judgment shall be entered accordingly.

DATED this __13th__ day of March, 1998 at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation